## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| USA DETERGENTS, INC., | ) | Case No. 08-10273(BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GEORGE L. MILLER, CHAPTER 7 | ) | |
| TRUSTEE OF THE ESTATE OF | ) | |
| USA DETERGENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-50100(KG) |
| | ) | |
| GREYSTONE BUSINESS CREDIT | ) | |
| II, L.L.C., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **Re Dkt No. 9** |

## <u>MEMORANDUM OPINION</u>

The Chapter 7 Trustee, George L. Miller (the "Trustee") brings this adversary action to recover what he alleges are damages in excess of $12 million to USA Detergents, Inc. (the "Debtor" or "USAD") resulting from the operation of USAD by Titan Global Holdings, Inc. ("Titan") for the benefit of USAD's prepetition secured lender, Greystone Business Credit II, L.L.C. ("Greystone"). The Trustee claims that defendants, through their conflicted relationships with USAD, harmed Debtor by wrongfully perpetuating USAD rather than recapitalizing or liquidating Debtor for the benefit of all creditors.

The Court has before it the Motion to Dismiss ("the Motion") of defendants Titan, Bryan Chance ("Chance"), R. Scott Hensell ("Hensell"), David M. Marks ("Marks")[1], Titan PCB West, Inc. n/k/a Titan Electronics, Inc., Titan PCB East, Inc. n/k/a Titan East, Inc., Oblio Telecom, Inc., Titan Wireless Communications, Inc., Starttalk, Inc., Pinless, Inc., Appco-Ky, Inc., and Frank P. Crivello's ("Crivello")(collectively the "Defendants") (D.I. 9). The parties fully briefed the Motion and the Court heard oral argument on July 29, 2009. For the following reasons, the Motion is denied.

## I. <u>JURISDICTION</u>

The Court's jurisdiction rests upon 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. <u>STATEMENT OF FACTS</u>

A motion to dismiss requires this Court to accept as true all allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Therefore, the following recitation of facts conforms with the plaintiff's view of the events and is drawn primarily from the complaint.

---

[1] The Court will refer to Chance, Hensell and Marks as the "Director Defendants," as they served as directors of USAD. At all relevant times, Chance was also Titan's CEO and President, Hensell was Titan's CFO and Marks was the Chairman of the Board of Titan.

**A.  Initiation of the Main and Adversary Proceedings**[2]

On February 12, 2008, three creditors filed an involuntary Chapter 7 petition for relief against USA Detergents, Inc. (the "Debtor" or "USAD"), a manufacturer and distributor of value priced laundry care products, household cleaners, personal care items, candles, and air fresheners with its principal place of business in New Brunswick, New Jersey.  Thereafter, the Debtor moved for, and on April 9, 2008, the Court granted, conversion to Chapter 11. On June 2, 2008, the Official Committee of Unsecured Creditors filed its Motion to Convert the Debtor's Chapter 11 case to a Chapter 7 case (D.I. 158), and on June 11, 2008, the Debtor filed its Notice of Conversion of Chapter 11 case to Chapter 7 (D.I. 177), which the Court granted on June 17, 2008 (D.I. 188).  On February 2, 2009, the Chapter 7 Trustee (the "Trustee") initiated this adversary proceeding by filing its Complaint against the Defendants.

**B.  The Loans by Greystone and GBC**

Debtor and Greystone Business Credit II, L.L.C. ("Greystone") entered into a Loan and Security Agreement, dated as of December 27, 2006 consisting of a $10 million revolving line of credit and a term loan of up to $500,000 (the "Loan") against which Debtor borrowed an aggregate principal amount of $8,049,583.41.  Compl. ¶26.

---

[2]Judge Brendan Shannon presides over the main case and assigned the adversary proceeding to the undersigned.

3

As early as February 2007, Greystone[3] realized that the Debtor would be unable to repay the Loan or continue doing business unless it received an additional infusion of capital. Compl. ¶27.  While negotiating with two parties regarding further capital infusion, the Debtor required additional cash, and in April 2007, GBC waived a $500,000 permanent reserve in exchange for a personal guarantee from the Debtor's CEO, Uri Evan ("Evan"). Compl. ¶29.  GBC demanded that Evan increase his personal  guarantee and in June 2007, after the Debtor's financial condition further deteriorated and the negotiations with the potential capital investors terminated without other prospects, Evans increased his personal guarantee up to $1 million.  Compl. ¶30.

### C.  Titan's Involvement with GBC and the Debtor

At approximately the same time the Debtor and Greystone executed the Loan, Titan and GBC also closed on a credit facility for Titan that included a $15 million revolving line of credit and a $7.95 million term loan.   Compl.  ¶32.  Titan, in exchange, executed a stock pledge agreement granting Greystone a first priority security lien and interest in the common stock of Titan's subsidiaries and their goods and inventory.  Compl. ¶32.  Titan also issued 500,000 shares of its common stock to GBC and a warrant to purchase an additional 500,000 shares.

---

[3] As of March 7, 2007, Greystone sold, transferred and assigned to GBC Funding, LLC ("GBC") all its right, title and interest in the Loan.  The Court will refer to Greystone and GBC collectively as "GBC."

In June 2007, Titan sought additional funding from GBC to purchase Appalachian Oil Company, Inc. ("AOCI").  GBC agreed to extend the necessary funds provided that Titan assist GBC by acquiring the Debtor. Compl. ¶35.   The Trustee alleges that Crivello, the Managing Member of Crivello Group, LLC ("Crivello Group") of which Titan was an investment portfolio company, had a personal interest in seeing that the AOCI deal closed. Crivello Group would receive a finder's fee of $750,000 in cash and ten million ten-year warranties from the acquisition.  Because both Titan and Crivello Group were anxious to close the AOCI deal, and funding from GBC was necessary to do so, Titan investigated acquiring the Debtor.  Compl. ¶36.

On or about July 27, 2007, Titan entered into a number of agreements (the "Option Agreements") as part of the closing by which it acquired an option to purchase an eighty percent controlling interest in the Debtor.   This transaction included a Stock Purchase Agreement entered into between Titan, the Debtor and Evan under which Defendant Frank J. Orlando ("Orlando")[4] was appointed the Chief Restructuring Officer of the Debtor and Defendant Chance, the President and CEO of Titan, became an advisor to the Debtor's Board.  Compl. ¶37.

---

[4] Defendant Orlando is not a party to the Motion.

5

Another aspect of this transaction was that Titan guaranteed the Debtor's debt to GBC (the "First Corporate Guarantee")[5] which included an additional $1.5 million over advance that would not be made available by GBC to the Debtor until the Titan-USAD transaction closed.  The only additional consideration required of Titan to acquire eighty percent of the Debtor's stock after execution of the Option Agreements was to continue to guarantee the Debtor's obligation to GBC and pay one dollar to the escrow agent.  Compl. ¶38.

In July 2007, Titan and the Debtor entered into a Services Agreement whereby Titan would provide "business management services" to the Debtor with  "complete authority with respect to the restructuring of the business of USAD.

Debtor's financial condition continued to deteriorate in the next two months.  Orlando regularly reported to Crivello about the Debtor's poor financial condition and disclosed to Titan, through Crivello, Chance, Hensell (Titan's Chief Financial Officer) and/or Marks (the Chairman of Titan and a Member of the Crivello Group) that Debtor needed $1 million to $1.5 million in working capital to continue doing business in the ordinary course.  Vendors were refusing to ship products to the Debtor making it impossible for them to fill open orders.  Despite these disclosures in September of 2007, Titan exercised its option and became owner of 80% of USAD's stock on October 16, 2007.  "  At the time that Titan acquired the Debtor, both Titan and GBC knew of the Debtor's desperate financial condition,

---

[5] All of Titan's then-subsidiaries, defendants in this action (the Court will refer to Titan and its subsidiaries, as a group, as the "Titan Entities"), were also signatories to the First Corporate Guarantee.  They did so at GBC's instruction, and did not have any real business relationship with the Debtor to warrant guaranteeing the Debtor's obligation to GBC. Compl. ¶38.

and that Debtor was unable to pay its debts as they became due.  Compl. ¶41.  Titan refused, however, to invest equity in USAD.  Compl. ¶¶ 40 - 43.

On or about October 17, 2007, USAD and GBC entered into Amendment No. 2 to Loan and Security Agreement ("Amendment No. 2").  The Titan Entities[6] also executed a second corporate guarantee (the "Second Corporate Guarantee").

In the final months of 2007, Debtor's financial condition rapidly deteriorated due to cancellation of back orders and a sharp increase in accounts payable.  Revenues for the quarter ending June 2007 were $10,206,000; for the quarter ending September 2007 were $8,295,000; and for the quarter ending December 2007 were $5,720,000.  By December 2007, Titan's primary objective was to extricate itself from its relationship with the Debtor with the least amount of loss, loss of investment already made and loss under the Second Corporate Guarantee.  On December 20, 2007, Crivello wrote to GBC that Titan's "mission is only to get GBC repaid and to recover our thousands of dollars already sunk into it.  I think we have to explore an efficient sale and/or liquidation process."  Compl. ¶¶50 - 51.

During this time, Orlando had begun to wind down the Debtor's operations but his focus, as well as that of the Director Defendants and Titan, was on minimizing both GBC's and Titan's exposure under the Corporate Guarantees rather than maximizing value for all creditors.  Through their efforts, GBC received payments totaling at least $35,039,680 from

---

[6]  Titan's new subsidiaries, AOCI and Appco, had also executed a separate guarantee following the closing of the AOCI purchase with the result that the Titan Entities' collectively guaranteed Debtor's entire debt to GBC.  Compl. ¶48.

7

USAD between January 1, 2007 and February 11, 2008, with $12,135,662.94 of that amount

paid between July 27, 2007 and the Petition Date.  Compl. ¶¶52 - 59.

### III.  DISCUSSION

Defendants seek to dismiss Counts II, VI, VII, and VIII of the Complaint under Rule

12(b)(6) for failure to state a claim upon which relief can be granted.  In these Counts, the

Trustee seeks to avoid and recover preferential transfers pursuant to 11 U.S.C. §§ 547 and

550, and to recover for breach of fiduciary duty, aiding and abetting breach of fiduciary duty,

and civil conspiracy.  The Complaint contains the following counts:

| Count | Claim | Defendants |
|---|---|---|
| I | Preferential Transfers | Greystone, GBC |
| II | Preferential Transfers | Greystone, GBC, Titan, Titan Subs, AOCI, Appco |
| III | Claims Disallowance | Greystone, GBC |
| IV | Claim Objection | Greystone, GBC |
| V | Equitable Subordination | Greystone, GBC |
| VI | Breach of Fiduciary Duty | Orlando, Chance, Hensell, Marks |
| VII | Aiding and Abetting | Greystone, GBC, Titan, Crivello |
| VIII | Civil Conspiracy | Greystone, GBC, Titan, Crivello |
| IX | Accounting | Greystone, GBC |

### A.  Rule 12(b)(6) Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) serves to test the sufficiency of the

factual allegations in a plaintiff's complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557

8

(2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain sufficient "factual allegations" which, if true, would establish "plausible grounds" for a claim: "the threshold requirement. . . [is] that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557.  In deciding a motion to dismiss under Rule 12(b)(6), a court tests the sufficiency of the factual allegations: it evaluates whether a plaintiff is "entitled to offer evidence to support the claims," and "not whether a plaintiff will ultimately prevail." *Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003).  This is true even if "actual proof of those facts is improbable" and "a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

As discussed above, the Court must accept as true all allegations in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Morse v. Lower Merion School District*, 132 F.3d 902, 905 (3d Cir. 1997).  However, "a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Sands v. McCormick*, 502 F.3d 263, 267-68 (3d Cir. 2007)(quoting *Morse*, 132 F.3d at 906).

## B.  Applicable Law

There are two categories of claims that the Defendants urge this Court to dismiss: Count II which arises under the United States Bankruptcy Code; and Counts VI, VII, and VIII which contain allegations of breaches of fiduciary duties and are governed by state law.

9

Under the internal affairs doctrine, only one state, the state of incorporation, has the authority to regulate a corporation's internal affairs. *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). "Few, if any, claims are more central to a corporation's internal affairs than those relating to alleged breaches of fiduciary duties by a corporation's directors and officers." *In re Fedders North America, Inc.*, 405 BR. 527, 539 (Bankr. D. Del. 2009)(citing *In re Topps Co. Shareholders Litigation*, 924 A.2d 951 (Del. Ch. 2007)). Because Counts VI-VIII allege breaches of fiduciary duties and related claims, they relate to the internal affairs of the Debtor and are governed by the laws of the state of incorporation, in this case Delaware. Therefore, the Court will apply Delaware law when determining whether to dismiss these Counts.

### C. Count II: To Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550

Count II of the Complaint alleges that during the preference period, from July 27, 2008 to the Petition Date, the Debtor made payments totaling $12,135,662.94 directly to or for the benefit of Titan and its subsidiaries on account of loan obligations owed to GBC that Titan guaranteed.

Subsection (b) of § 547 provides that:

 the trustee may avoid any transfer of an interest of the debtor in property
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was solvent;
   (4) made-
      (A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of
the petition, if such creditor at the time of such the transfer was an
insider; and
(5) that enables such creditor to receive more than such creditor would
receive if-
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent
provided by the provisions of this title.

The Defendants argue that the Trustee has not met at least two of the requirements
of Section 547. They contend that he has not demonstrated that Titan, as a guarantor of debt
owed to GBC, is a creditor within the meaning of Section 547. Alternatively, Defendants
argue that even if Titan is a creditor, because the Trustee previously admitted that GBC was
oversecured, the Trustee therefore cannot establish the fifth requirement, that the creditor
received more through the preferential payments than it would have in a Chapter 7
liquidation.

1. **Titan is a Creditor**

The parties have presented strong and thoughtful arguments on both sides of the first
issue, whether Titan, by virtue of guaranteeing the debt that was paid down during the
preference period, qualifies as a creditor. Titan acknowledges that preference actions may
be brought against guarantors because when a lender "receives direct payment on its
antecedent debt, the insider guarantor will realize a corresponding dollar-for-dollar
reduction in the amount of his contingent liability on the guarantee." *In re Erin Food
Services, Inc.*, 980 F.2d 792, 801 (1st Cir. 1992). The Titan Entities argue that because in

the Second Corporate Guaranty they waived their right to collect from Debtor for any amounts they paid on their guarantees, they are not creditors. This doctrine, known as the "Deprizio waiver," arises from the Seventh Circuit decision in *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprezio Construction Co.*), 874 F.2d 1186 (7th Cir. 1989) which held that transfers made during the preference period that benefit a non-insider creditor including a guarantor, who received payments on a debt owed by the debtor to a non-insider creditor can be recovered under §547. They maintain, however, that this rule of law does not apply when the guarantor has waived any claims against the debtor as Titan did in this case. Such a waiver, referred to as an "anti-Deprizio" waiver, effectively negates a guarantor's status as a "creditor."

The Trustee, on the other hand, argues that an "anti-Deprezio" waiver cannot serve as a bar to the Trustee's recovery of the preference payment because a guarantor can easily overcome its waiver by purchasing the lender's note rather than paying it, thus stepping into the shoes of the lender and becoming a creditor. The Trustee and various courts have characterized such waivers as merely an effort to eliminate, by contract, a provision of the Bankruptcy Code.

The Court does not have the benefit of precedent in this Circuit. The Court's review of the available case law leads it to conclude that the Defendants who the Trustee named in Count II (the "Preference Defendants") are creditors and therefore subject to Section 547.

The Preference Defendants concede that guarantors are creditors because "a guarantor of . . . a claim against the debtor will also be a creditor, because he will hold a contingent claim against the debtor that will become fixed when he pays the creditor whose claim he has guaranteed or insured." *In re XTI Xoxnix Technologies, Inc.*, 156 BR. 821, 828 (Bankr. D. Or. 1993).  The Preference Defendants argue however, that if the guarantor waives his right to collect against the debtor, he loses creditor status.  *Id.* At 834.

The Titan Entities waived subrogation, contribution, indemnity and reimbursement rights in the Second Corporate Guarantee.  The Trustee cites several cases, which the Court finds persuasive, holding that were a guarantor's waiver to eliminate creditor status, it would contravene the policy considerations of the preference sections of the Code.  *Russell v. Jones* (*In re Pro Page Partners, LLC*) 292 BR. 622, 631 (Bankr. E.D. Tenn. 2003); and *In re Telesphere Communications, Inc.*, 229 BR. 173, 176, n.3 (Bankr. N.D. Ill. 1999), wherein the court held the guarantor was a creditor and stated:

> [S]uch a waiver has no economic impact -- if the principal debtor pays the note, the insider guarantor would escape preference liability, but if the principal debtor does not pay the note, the insider could still obtain a claim against the debtor, simply by purchasing the lender's note rather than paying on the guarantee.  Thus, the "Deprizio waiver" could only be seen as an effort to eliminate, by contract, a provision of the Bankruptcy Code.  The attempted waiver of subordination rights was thus held to be a sham provision, unenforceable as a matter of public policy.

The Court agrees with the Trustee that the waiver does not transform the Titan Entities' creditor status.  Even were the Titan Entities not creditors, they might be

13

responsible for transfers to GBC as beneficiaries by way of reduction in their contingent liability on the guarantee. As such, the Trustee might recover under Bankruptcy Code Section 550.

## 2. GBC and Titan Received More Than Under Chapter 7

An important element of a cause of action to recover a preferential payment is that the creditor received more than it would have in a Chapter 7 liquidation. Section 547(b)(5) is not a defense to a preference action, but a fundamental element of any case asserting that preference claim. *In re Radnor Holdings Corp.*, 353 BR. 820, 846-47 (Bankr. D. Del. 2006). Section 547(g) places the burden of proving the elements of a preference action on the plaintiff. *Id.* at 847 (citing *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991); *Golden v. The Guardian (In re Lenox Healthcare, Inc.*), 343 BR. 96, 107 (Bankr. D. Del. 2006)). It is well established that transfers to fully or over secured creditors are generally not preferential because fully-secured creditors are entitled to completely recover in a chapter 7 liquidation. *Id.* at 846.

The Trustee makes enough factual assertions at this early pleading stage with respect to this element of Section 547 in the Complaint. The Trustee's numerous factual allegations detailing Debtor's financial woes raise a strong inference that Titan, Greystone, GBC, the Guarantors, Appalachian and Appco all received more than if the payments had not been made and they had received payment of their debts to the extent provided under the provisions of the Bankruptcy Code.

14

Defendants also argue that the Trustee is judicially estopped from asserting the Count II claims. "Judicial estoppel prevents a party from 'playing fast and loose with the courts' by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding)." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 377 (3d Cir. 2007)(quoting *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990)). This doctrine requires a showing of (1) a clear inconsistency and (2) that the party estopped obtained an unfair advantage from that inconsistency. *Id.* (citing *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 517-18 (3d Cir. 2005). Defendants seize upon Debtor's statement made in a different context in Debtor's objection to a lift stay motion. In opposing GBC's lift stay motion, the Trustee argues that GBC "cannot demonstrate that its alleged collateral is declining in value as a result of the automatic stay, and, in fact [GBC] has recited that the value of the alleged collateral is more than the alleged claim." Objection, ¶ 9 (D.I. 211). Clearly, USAD was reiterating GBC's argument and was arguing that GBC had failed to meet its burden. The Court is satisfied that judicial estoppel does not apply.

### D. Count VI: Breach of Fiduciary Duty

In his Complaint, the Trustee asserts that the four Director Defendants moving for dismissal, Orlando, Chance, Hensell and Marks, violated their fiduciary duties to the Debtor, specifically the duties of good faith, fair dealing, trust, loyalty, diligence and due care. To support this allegation, he sets out three specific facts: that after becoming CEO and President of USAD, Orlando took orders directly from Crivello and was not the true

15

decision maker for USAD; that Chance, Hensell and Marks never met nor took action as a Board between the time of their appointment in the summer of 2007 and the initiation of the bankruptcy proceedings; and that the four Directors did not focus on what was in USAD's best interest, concentrating instead on reducing Titan's and GBC's exposure.

The Director Defendants argue that the Trustee has not alleged sufficient facts, or at least specific enough facts, to sustain a cause of action for breach of fiduciary duties. Further, they argue that they are protected by a provision in USAD's certificate of incorporation which exculpates directors against personal liability, and when combined with Delaware General Corporation Law, 8 *Del.C.* §102(b)(7), mandates that this Court dismiss Count VI with respect to any alleged breach of the duty of care. As for breaches of duties not included in the exculpatory provisions of the certificate of incorporation, the Director Defendants argue that the Trustee has not alleged sufficient enough facts to overcome the presumptive application of the business judgment rule.

Breaches of fiduciary duties by directors and officers are central to a corporation's internal affairs. *See In re Topps Co. Shareholders Litigation*, 924 A.2d 951 (Del. Ch. 2007); *see also In re Fedders North America, Inc.*, 405 BR. 527, 539 (Bankr. D. Del. 2009). These duties, often referred to as a "triad of duties," include the duties of care, loyalty and good faith. *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). This "triparte fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided." *Id.*

16

1. **Duty of Care**

In the face of Debtor's certificate of incorporation, the Trustee must show gross negligence. *Cargill, Inc. v. JWH Special Circumstance L.L.C.*, 959 A.2d 1096, 1113 (Del. Ch. 2008). The gross negligence standard, however, is somewhat flexible in that the "exact behavior that will constitute gross negligence varies based on the situation, but generally requires directors and officers to fail to inform themselves fully and in a deliberate manner." *In re Fedders*, 405 BR. at 540 (citing *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 368 (Del. 1993).

The Trustee alleges facts that upon proof would establish that the Director Defendant were grossly negligent in failing to inform themselves about the financial condition of the Debtor in order to formulate a plan to stop the financial decline. The Trustee alleges that the Director Defendants abdicated their responsibilities to exercise informed, independent judgment. Compl. ¶¶ 44-47 and 49. The Complaint contains enough facts which, if proven, show that the Director Defendants were grossly negligent and therefore in breach of their duty of due care.

The Court's analysis must turn to whether it must dismiss Count VI based upon the existence and legal effect of the exculpatory provision of the Certificate of Incorporation, adopted pursuant to 8 *Del.C.* §102(b)(7). The provision in USAD's Certificate of Incorporation states:

17

> The personal liability of all of the directors of the Corporation to the Corporation or its stockholders is hereby eliminated and limited to the fullest extent legally permissible under the provisions of the Delaware General Corporation Law, as the same may be amended and supplemented (but, in the case of any such amendment, only to the extend that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment).

Application of this provision is not reserved solely for the corporation and its shareholders but also applies to claims brought by creditors of an insolvent corporation. *IT Group Inc. v. D'Aniello,* C.A. No. 04-1268, 2005 Dist. LEXIS 27869, *40 (D. Del. Nov. 15, 2005).

As the Delaware Supreme Court has explained, courts can apply §102(b)(7)[7] exculpatory provisions to claims for a violation of the duty of care. *Malpiede v. Townson*, 780 A.2d 1075, 1090-96 (Del. Supr. 2001). The policy behind exculpation is to allow directors to take business risks without fear of negligence lawsuits. *Id.* at 1095. Delaware courts, however, have also made it clear that this exculpation is only available where the cause of action only states a due care violation and not a claim which alleges gross negligence or breaches of multiple duties, including the duty of loyalty. *Id.* at 1093, 95

---

[7] This section sets out in relevant part:
(b) The certificate of incorporation may also contain. . . (7) A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

(quoting *Arnold v. Society for Savings Bancorp.*, 650 A.2d 1270, 1288 (1994)("[W]here the factual basis for a claim *solely* implicates a violation of the duty of care, this court has indicated that the protections of such a character provision may properly be invoked and applied.")).

It appears, therefore, that whether this Court can dismiss Count VI for breach of fiduciary duties, specifically the duty of due care, based upon the exculpation clause depends on whether the Trustee establishes a cause of action for gross negligence and breach of duty of loyalty and/or duty of good faith. Because, as explained in further detail below, the Trustee alleges facts sufficient to sustain a cause of action for breach of the duties of loyalty and good faith, the Director Defendants cannot invoke the exculpation clause and the Court will not dismiss the claims for breach of the duty of due care.

## 2. **Duty of Loyalty**

The duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *In re Fedders North America*, 405 BR. 527, 540 (Bankr. D. Del. 2009)(quoting *Cede & Co. V. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)). Delaware law requires a plaintiff to establish that: (1) a self interested transaction occurred and (2) the transaction was unfair to the plaintiffs. *Joyce v. Cuccia*, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997).

As to the first requirement, the Trustee's facts support the claim that the Director Defendants promoted their self-interest.  The Trustee clearly alleges that Titan, acting as the controlling shareholder of USAD, was seeking funds to purchase AOCI while receiving funding from GBC.  Compl., ¶ 95, incorporating ¶ 35.  The Trustee further alleges that after Titan acquired the option to purchase 80% of USAD's stock, Titan guaranteed USAD's debt owed to GBC in consideration for GBC's funding of Titan's acquisition of USAD.  This claim of self interest is sufficient to establish a self-interested transaction.  The Trustee also properly pleads unfairness, the second requirement.  Not only did Titan – while acting in control of USAD – guarantee USAD's debt to GBC, but it also failed to invest any equity into USAD.  Paragraph 40 of the Complaint as incorporated into the Trustee's breach of fiduciary claim in paragraph 95, is sufficient.  The allegations satisfy the breach of duty of loyalty standard as set forth in *Joyce v. Cuccia*.

### 3.  Duty of Good Faith

The duty to act in good faith is a subsidiary element of the duty of loyalty. *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  To sustain this cause of action, a plaintiff must demonstrate "conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)." *Id.* at 369.  In *In re Walt Disney Co. Derivative Litigation*, the Delaware Supreme Court described three scenarios in which a director may be found liable under a theory of breach of the duty of good faith. 906 A.2d 27 (Del. 2006).  Among these are when a director

20

"intentionally acts with a purpose other than that of advancing the best interests of the corporation;" "acts with the intent to violate applicable positive law;" and "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Id.* at 67.

In this case, two of the facts the Trustee alleges suggest a failure to comply with the duty of good faith: Orlando taking orders from Crivello regarding decisions made about the Debtor and the four Director Defendants focusing on limiting Titan and GBC's exposure rather than what was in the best interest of USAD. These facts, if taken as true, demonstrate both intentional acts with a purpose other than that of advancing the best interests of the corporation and an intentional failure to act in the face of a known duty to act. By advancing the interests of Titan and GBC rather than those of the Debtor, the Director Defendants breached their duty of good faith. The Trustee has set out facts sufficient to survive a motion to dismiss the alleged breaches of the duty of good faith.

### E.  Count VII: Aiding and Abetting Breach of Fiduciary Duty

The Trustee alleges that Titan and Crivello each aided and abetted the breach of fiduciary duties by one or  more of Orlando, Chance, Hensell and/or Marks as they substantially and knowingly participated in, benefitted from and aided and abetted the breach of fiduciary duty or duties engaged in by the officers, directors and controlling shareholders of the Debtor.  Defendants contend that because the alleged breaches of fiduciary duties were essentially the alleged preferential transfers, this Count must be

dismissed.  They argue that such a claim cannot be supported by Delaware state law which does not recognize a cause of action for aiding and abetting a fraudulent transfer and therefore cannot support a claim for aiding and abetting a preferential payment.[8]  The Trustee counters that the alleged breaches of fiduciary duties that the Director Defendants aided and abetted were not the preferential transfers but those contained in Count VI of the complaint, and therefore are not barred.

In order to establish a case for aiding and abetting breach of fiduciary duty, a plaintiff must establish: "(1) the existence of a fiduciary relationship; (2) proof that the fiduciary breached its duty; (3) proof that a defendant, who is not a fiduciary, knowingly participated in a breach; and (4) a showing that damages to the plaintiff resulted from the concerted action of the fiduciary and nonfiduciary." *In re Fedders North America, Inc.*, 405 BR. 527, 544 (Bankr. D. Del. 2009)(citing *Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1125 (Del. Ch. 2008)).

Drawing all reasonable inferences in favor of the Trustee, the Complaint sets out facts sufficient to sustain Count VII with respect to Defendants Crivello and Titan.  A fiduciary relationship existed between the Director Defendants and the Debtor.  As discussed above, the Trustee set out sufficient facts to survive dismissal on the breach of fiduciary duty claims.  While the Defendants contend that the alleged breaches were

---

[8] The cases cited by the Director Defendants include: *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203 (Del. Ch. 2006), *aff'd*, *Trenwick Am. Litig. Trust v. Billett*, No. 495, 2006, 2007 Del. LEXIS 357 (Del. Aug. 14, 2007); *In re Universal Mining Corp.*, 2001 Bankr. LEXIS 1064 (Bankr. E.D. Ky. 2001).

preferential transfers, the discussion regarding Count VI of the Complaint demonstrates that the Complaint casts a wider net than the alleged preference transactions. Therefore, the cited authorities do not mandate dismissal of Count VII. The Trustee further alleges facts showing that both Defendants Crivello and Titan knowingly participated in the fiduciary duty breaches. Specifically, the Trustee alleges a breach of the duty of good faith, when Crivello and Titan: (1) gave orders directly to Orlando, rather than allowing him to make decisions regarding the Debtor; and (2) pressured the Director Defendants to focus on minimizing losses for Titan and GBC rather than the Debtor. The Court will therefore not dismiss Count VII of the Complaint for aiding and abetting the breaches of fiduciary duties.

### F. <u>Count VIII: Civil Conspiracy</u>

The Trustee alleges that the Director Defendants, GBC, Titan and Crivello engaged in a conspiracy to breach fiduciary duties and engage in other wrongdoings. The Trustee further alleges that the Defendants took actions in furtherance of the conspiracies. The Defendants moved for dismissal based on two arguments. First, they contend that to state a valid cause of action for civil conspiracy, a plaintiff must also allege a tort independent of the conspiracy. Second, Defendants argue that because the Director Defendants were acting as agents for the other Defendants, they could not have conspired with one another. The Trustee responds that the independent tort is the breach of the fiduciary duties, and even if the Director Defendants were agents of Titan and/or Crivello (an issue not before the Court as this time), the inclusion of GBC as a defendant on this Count elevates Defendants'

23

actions to a civil conspiracy.

Under Delaware law, "civil conspiracy is an independent wrong that occurs when there is: '(1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damages.'" *In re Am. Intern. Group, Inc.*, 965 A.2d 763, 805 (Del. Ch. 2009)(quoting *Nicholet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987)).  Despite a split in authorities, Delaware has maintained the requirement of an independent tort for a civil conspiracy claim. *Id.*  The rationale for civil conspiracy claims is that it allows a plaintiff to recover against all conspirators, under a theory of vicarious liability, for the acts of co-conspirators in furtherance of the conspiracy. *Allied Capital v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006)(citing *Laventhol, Krekstein, Horwath & Horwath v. Tuckerman*, 372 A.2d 168, 170 (Del. 1976)).  State law also suggests that there is an overlap between aiding and abetting a breach of fiduciary duty and civil conspiracy to breach fiduciary duties. *Id.* at 1038 (citing *Weinberger v. Rio Grande Industries, Inc.*, 519 A.2d 116, 131 (Del.Ch.1986) (stating that claim for civil conspiracy involving breaches of fiduciary duty is sometimes called "aiding and abetting"); *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del.Ch.1984) (defining civil conspiracy claim using traditional elements associated with aiding and abetting breach of fiduciary duty), *aff'd*, 575 A.2d 1131 (Del.1990); *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, 1995 WL 694397, at *15 n. 11 (Del.Ch.1995) (noting that the court has analyzed the knowing participation requirement of aiding and abetting a breach of fiduciary duty by reference to

elements of a civil conspiracy claim); *Malpiede v. Townson*, 780 A.2d 1075, 1098 n. 82 (Del.2001) (stating, in breach of fiduciary duty case, that "[a]lthough there is a distinction between civil conspiracy and aiding and abetting, we do not find that distinction meaningful here")).

The Court will not dismiss the Count VIII for civil conspiracy. Because under Delaware law the causes of action for aiding and abetting a breach of fiduciary duty, and civil conspiracy to breach fiduciary duty, are so closely related and this Court held that the Trustee's facts are sufficient to support the aiding and abetting claim, Count VIII will also survive. The Trustee sufficiently alleges, when reading the Complaint in a light most favorable to the Trustee, that there was an agreement between all of the parties, the Director Defendants, Titan, Crivello, and GBC, to engage in activities that constitute a breach of fiduciary duties. Finally, the Trustee alleges damages as a result of the conspiracy.

The Court does not accept the Defendants' argument that the Court should dismiss Count VIII because, they allege, the Director Defendants were agents of Titan and Crivello and an agent cannot conspire with its principal. There is, as yet, no basis to find an agency relationship and the Trustee has not alleged such a relationship.

25

## **CONCLUSION**

In conclusion, the Court will deny the Defendants' Motion to Dismiss.  The Trustee alleges sufficient facts to survive the dismissal of the alleged preferential transfers, the breaches of fiduciary duties and the related aiding and abetting and civil conspiracy claims.

The Court will issue an Order consistent with this opinion.


Dated: October 16, 2009

KEVIN GROSS, U.S.B.J.